## WASHINGTON NEWS COMPANY *v.* THERESA SATTI

[No. 54, October Term, 1935.]

*Decided January 15th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Hilary W. Gans* and *Daniel E. Klein*, with whom was *Joseph T. Brennan* on the brief, for the appellant.

*T. Lyde Mason, Jr.*, with whom was *Stephen P. Campbell, Jr.*, on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

On appeal from a judgment for damages to the infant plaintiff from being struck by an automobile owned and driven by one Canolles, it is objected by the defendant and appellant that there is no evidence legally sufficient to prove that Canolles was acting as its servant while driving, and that a verdict for the defendant should therefore have been directed. The trial court refused a prayer for that direction.

The defendant was a seller of school supplies to retail merchants, with its place of business in Washington, District of Columbia. Canolles, living in Baltimore City, was a salesman of their goods, with the whole of the Baltimore field for sales given to him. At the same time, and up to within a month of the accident, he had, as he said, "another line—sundry goods and paper products," for a company in Brooklyn, New York. At the time of the accident he had only the one connection; that with the defendant in this suit. The evidence, adduced on behalf of the plaintiff and uncontradicted, was that Canolles had samples furnished him by the defendant from Washington, and with these he procured orders from dealers and transmitted.

them to the defendant for deliveries from Washington directly. The defendant furnished him with names of possible customers, and he solicited new ones. Some were customers of both Canolles' principals when he had two. He was given no directions by the defendant as to any progress in his work, none as to route or time. The time he worked, the number of days a week, or no time at all, would be at his election, and as he pleased. He made no accounting of his work, reporting nothing but orders from customers when he received any. He had no connection with deliveries, and none with the payments for goods sold; and his compensation was strictly commissions on sales.

In going about for possible purchasers he used his own Hudson sedan automobile. The defendant's agents in Washington knew he was doing so, and about six months after he started on the connection with them they procured from him information as to the title of the automobile, and the engine and serial numbers. Sometimes he drove the automobile on trips to see the employer's agents there; but he paid all the expenses of his car, receiving nothing from the defendant on account of them.

The sales made for this principal were few. During the year 1932, his commissions amounted to only $346, during 1933, $426.12; and on April 14th, 1934, he received only $2.07 for two weeks' sales. At that time he resigned the connection because he had secured work on a salary.

The infant plaintiff was struck by the car on April 14th, 1934, as Canolles was driving to make a purchase for himself during a day's work among customers, and he is charged with negligence causing the accident. In the opinion of the court there was no responsibility in law on the defendant if Canolles was negligent, because he was not then a servant of the defendant, but an independent commission agent, or, in the familiar phraseology of this branch of the law, an independent contractor. There was no hiring of his time and labor. Neither the amount of his work nor the order of it had been placed under the control of the defendant. These remained sub-

ject to Canolles' independent choice. The defendant was involved only in the receipt of orders from him and the return of commissions. The decision in the case of *Regal Laundry Co. v. A. S. Abell Co.*, 163 Md. 525, 163 A. 845, 847, cited in argument, was that a newspaper reporter whose time and labor were continuously under the control of the publishing company, and who, at the time of causing an injury, was returning for orders after reporting on one assignment, was none the less a servant of the company while doing so because of his using his own automobile. "If O'Donnell had been furnished an automobile by his employer," said the court in the opinion, "it could not be seriously contended that his employer would not be liable. Therefore the contention that O'Donnell was an independent contractor rests upon the single fact of his using his own car for transportation purposes." Given the fact that he was a servant of the defendant, the use of his car did not convert him into an independent contractor while driving. Here the question is the primary one of existence of the relation of master and servant at all, and it comes up on a different state of facts; one that we think does not permit the finding of the relation. "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right of control with respect to his physical conduct in the performance of the undertaking." *Restatement Am. L. Inst., Agency*, secs. 2 and 220; *Hood v. Azrael*, 167 Md. 641, 175 A 666. And see 1 *Labbatt, Master and Servant*, (2nd Ed.) sec. 67, page 236.

A verdict for the defendant should, in our opinion, have been directed.

*Judgment reversed without awarding a new trial, with costs.*